# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| BREN SANTOYO, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No.: 2:21-cv-2566<br>) |
| EXPERIAN INFORMATION SOLUTIONS, INC., and MIDLAND MORTGAGE COMPANY, | )<br>) **COMPLAINT**<br>) **WITH JURY TRIAL DEMAND**<br>) |
| Defendants. | ) |

## COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

## INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA,

1

Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3. Bren Santoyo ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants Experian Information Solutions, Inc. ("Experian"), and Midland Mortgage Company ("Midland") (jointly referred to as "Defendants") with regard to inaccurate and/or materially misleading credit information and Defendants' failure to properly investigate Plaintiff's disputes.

4. Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

5. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6. Unless otherwise stated, all of the conduct engaged in by Defendants took place in Kansas.

7. Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

8. Through this Complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

## JURISDICTION AND VENUE

9. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331.

10. This Court has federal question jurisdiction because this case arises out of Defendants' violations of federal law—the FCRA.

11. Venue is proper pursuant to 28 U.S.C. § 1391 as all the events and omissions giving rise to Plaintiff's claims occurred in Kansas.

12. Defendants are subject to the Court's personal jurisdiction, as Defendants each conduct business within Kansas, and Defendants' conduct giving rise to this action accrued in Kansas.

13. Plaintiff is informed and believes and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

14. Plaintiff is informed and believes and on that basis allege that at all times mentioned herein Experian was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which Experian is liable to Plaintiff for the relief prayed for herein.

15. Plaintiff is informed and believes and on that basis alleges that at all times mentioned herein Midland was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which Midland is liable to Plaintiff for the relief prayed for herein.

## PARTIES

9. Defendant Experian is an entity doing business in the State of Kansas.

10. Defendant Experian's registered agent address is: The Corporation Company, Inc., 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

11. Defendant Experian regularly assembles and/or evaluates consumer credit information for the

purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

12. Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

13. Unless otherwise indicated, the use of Experian's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Experian.

14. Defendant Midland Mortgage Company is a limited liability company formed under the laws of the State of Oklahoma, and doing business in the state of Kansas.

15. Midland's registered agent address is: M. Randolph Sparks, 501 N.W. Grand Blvd., Oklahoma City, OK 73118.

16. Midland does business under the name MidFirst Mortgage.

17. The use of Midland in this complaint shall refer to both Midland and MidFirst.

18. Midland regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions, such as Plaintiff's transactions at issue in this lawsuit and described herein, and is, therefore, a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

19. Unless otherwise indicated, the use of Midland's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Midland.

## FACTUAL ALLEGATIONS

16. On or about October 28, 2016, Plaintiff obtained a residential home mortgage from Open Mortgage, LLC for the original principal amount of $121,920.00 (the "Mortgage").

17. As indicated on the Note underlying and memorializing the Mortgage, the maturity date

4

of the Mortgage is November 1, 2046.

18. The Mortgage was recorded with the Wyandotte County, KS Register of Deeds on or about November 4, 2016, book and page numbers 2016R-15312.

19. The Mortgage is collateralized by the real property commonly known as 5112 Douglas Ave., Kansas City, KS 66106 (the "Home").

20. On or about May 27, 2020, Plaintiff filed a Chapter 13 Bankruptcy petition in the United States District Court for the District of Kansas, Case Number 20-20812 (the "Bankruptcy Case").

21. After the filing of the Bankruptcy Case, the servicing of the Mortgage was transferred to Midland on or about June 19, 2020.

22. Plaintiff filed their First Amended Chapter 13 Plan in the Bankruptcy Case on or about July 2, 2020 (the "Bankruptcy Plan").

23. On or about August 19, 2020, the bankruptcy court entered an Order confirming the Bankruptcy Plan.

24. Pursuant to the terms of the confirmed Bankruptcy Plan, Plaintiff was required to pay his ongoing Mortgage payments directly to Midland.

25. The terms of the confirmed Bankruptcy Plan have not changed since that date.

26. Plaintiff has faithfully made his monthly payments to Midland directly, as required by the terms of his confirmed Bankruptcy Plan.

27. As a secured debt which will mature *after* the completion of the Bankruptcy, the Mortgage is considered to be a "Long Term Debt Not Subject to Discharge" pursuant to 11 U.S.C. § 1322(b)(5) and 11 U.S.C. § 1328(a)(1).

28. This designation and treatment of the Mortgage in the Bankruptcy Case means that the

Mortgage remains largely unaffected by the Bankruptcy Case.

29. However, Defendants reported the Mortgage on Plaintiff's Experian credit report in an inaccurate, incomplete, and/or materially misleading way.

30. Plaintiff's creditors and potential creditors have accessed Plaintiff's Experian credit report while the misreporting described herein was on Plaintiff's credit report and were misinformed by Defendants about Plaintiff's credit worthiness.

### *Midland and Experian's Inaccurate Reporting on Plaintiff's Experian Credit Report*

31. Plaintiff reviewed a copy of his consumer report as published by Experian on or before April 13, 2021 (the "Experian Credit Report").

32. Upon Plaintiff's review of the Mortgage tradeline (the "Midland Account"), he found that Midland and Experian were reporting numerous incorrect and/or incomplete remarks regarding the Midland Account.

33. The Midland Account tradeline on his April 13, 2021 Experian credit report was reporting no balance, no monthly payment, a payment history that stopped the month prior to the date the Bankruptcy Case was filed, and a Status of "Petition for Chapter 13 Bankruptcy/Never Late."

34. By failing to report a balance, monthly payment amount, or payment history past the date that the Bankruptcy Case was filed, and by reporting Midland Account to include bankruptcy information, Midland and Experian created the false impression that the Mortgage would be or had already been discharged through the Bankruptcy Case when that was not true.

35. Moreover, by reporting inaccurate and/or incomplete information, Midland and Experian deprived Plaintiff of the positive data associated with the Midland Account and instead

6

gave the materially misleading impression that the Midland Account was a negative account.

36. It is illegal, inaccurate, incomplete, and/or materially misleading for Midland and Experian to report any derogatory collection information which is inconsistent with the Orders entered by the Bankruptcy Court.

37. It is improper for Midland and Experian to report any derogatory collection information which was factually incorrect, incomplete, and/or materially misleading.

38. However, Midland and Experian either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information after the Bankruptcy Case was filed, as discussed herein.

### *Plaintiff's Dispute to Experian*

39. On or after May 4, 2021, Plaintiff disputed Experian and Midland's reporting of the Midland Account pursuant to 15 U.S.C. § 1681i by notifying Experian, in writing, of the incorrect and inaccurate credit information.

40. Plaintiff sent a letter to Experian requesting the above inaccurate and incorrect derogatory information be updated, modified, or corrected as to the Midland Account (the "Experian Dispute").

41. Specifically, Plaintiff explained in the Experian Dispute that the Midland Account bore a current balance and monthly payment, that he had been timely making all required payments after the date the Bankruptcy Case was filed, and that Midland and Experian's reporting that the Midland Account was included in bankruptcy was false and/or misleading.

42. Plaintiff attached supporting documents to the Experian Dispute, including a copy of his

7

confirmed Chapter 13 Plan from the Bankruptcy Case which showed that he was to make his monthly mortgage payments directly to Midland, as well as a copy of a recent monthly mortgage statement from Midland which showed a balance owed, a monthly payment amount, and other relevant information regarding the Mortgage.

43. Experian received the Experian Dispute.

44. Upon receipt of the Experian Dispute, Experian was required to conduct a reinvestigation into the Midland Account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

45. Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify Midland of the Experian Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with the Experian Dispute for Midland's review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

46. Pursuant to 15 U.S.C. § 1681s-2(b), Midland had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

47. Upon information and belief, Experian notified Midland of the Experian Dispute.

48. Upon information and belief, Midland received notice of the Experian Dispute as to the reporting of the Midland Account on Plaintiff's Experian Credit Report.

49. A reasonable investigation by Experian and Midland would have indicated that they were reporting the Midland Account inaccurately, incompletely, and/or in a materially misleading way on the Experian Credit Report.

### *The Continued Inaccurate Reporting of the Midland Account on Plaintiff's Experian Credit Report*

50. On or after June 5, 2021, Plaintiff received dispute results as published by Experian on or about June 5, 2021 (the "Experian Dispute Results").

51. On the Experian Dispute Results, Midland and Experian failed to remove or correct the inaccurately, incompletely, and/or materially misleading reported information contained on the Midland Account tradeline.

52. Instead, on the Experian Dispute Results, Midland and Experian continued to inaccurately, incompletely, and/or materially misleadingly report the Midland Account.

53. Specifically, Midland and Experian continued to report the Midland Account with no balance, no monthly payment amount, no payment history past the month the Bankruptcy Case was filed, and they continued to report the account as "Petition for Chapter 13 Bankruptcy/Never late".

54. Midland and Experian's reporting was inaccurate, incomplete, and/or materially misleading because the result of its reporting was to make it appear as if the Midland Account had been or would be discharged through the Bankruptcy Case, that no balance or monthly payment was owed, and that Plaintiff had not made any payments since or before his Bankruptcy Case was filed.

55. By reporting inaccurate and/or incomplete information, Midland and Experian deprived Plaintiff of the positive data associated with the Midland Account and instead gave the materially misleading impression that the Midland Account was a negative account.

56. Indeed, on the Experian Dispute Results, the Midland Account is listed under the section: "Your Potentially Negative Account Activity".

57. Midland and Experian's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the reported information on the Midland Account were particularly egregious in that the Experian Dispute included supporting documents provided by Midland which Midland and Experian chose to ignore.

*The Impact of Inaccurate or Misleading Information on Consumer Reports*

58. A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

    i. credit or insurance to be used primarily for personal, family, or household purposes;

    ii. employment purposes; or

    iii. any other purpose authorized under section 1681b.

59. As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

60. A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. See https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

*61.* The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. See https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

*Credit Scoring*

62. The Fair Isaac Corporation credit risk scoring system, commonly referred to as "FICO", is the leading credit scoring system and utilizes data reported by credit reporting agencies.

See, https://www.myfico.com/credit-education/credit-scores/.

63. Defendants' departures from the credit industry's own reporting standards have caused Plaintiff's to suffer from reduced FICO credit scores.

64. The Fair Isaac Corporation uses the data in consumer reports to calculate consumers' credit scores (also known as credit risk scores). *Id*.

65. The term "credit score" is a numerical value or a categorization derived from a statistical tool or modeling system used by a person who makes or arranges a loan to predict the likelihood of certain credit behaviors, including default. Consumer Financial Protection Bureau, *Supervision and Examination Manual, Version 2* (October 2012), p. 53, available at http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

66. FICO scores are calculated from five main categories of credit data in a consumer's credit report. Those categories, and their weighted values, are as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. See, https://www.myfico.com/credit-education/whats-in-your-credit-score/.

67. Payment history is the most important aspect of a consumer's credit score because it shows how the consumer has managed his finances, including any late payments.

68. Credit history is also very important, as it demonstrates how long the consumer has been managing his accounts, when his last payments were made, and any recent charges. See, https://www.transunion.com/credit-score.

69. The cost of credit (e.g., interest rates, fees, etc.), the availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extended financing periods and lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines, are all, by and large, driven by a consumer's credit score.

70. Inaccurate or incorrect credit reporting very often results in a lower FICO and other credit scoring model scores, and thus higher costs of credit, diminished opportunity, and less purchasing power for consumers.

71. Incorrectly reporting the tradeline of Plaintiff's Mortgage—which is open, active, and has a balance that Plaintiff is making payments on—with no balance, payment data, and as included in bankruptcy, adversely affects Plaintiff's FICO scores, as it excludes any recent positive payment history associated with the Mortgage, it alters the age/length of credit history, and it alters the mix of accounts/types.

72. There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score.

73. For example, a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's access to credit or the products and rates the consumer is able to secure.

74. Consistent with FTC study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. See, https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

*Defendants' Failures and Plaintiff's Damages*

75. It is inaccurate, incomplete, and/or materially misleading to report a payment history, which is factually incorrect and negatively reflects upon an individual consumer's credit profile by making it appear that the consumer has failed to satisfy and live up to their monthly credit obligations.

76. It is inaccurate, incomplete, and/or materially misleading to report no balance information, which is factually incorrect and negatively reflects upon an individual consumer's credit profile by making it appear that the account is discharged in bankruptcy or will be discharged in bankruptcy when it is actually an open and current account that the consumer is paying on.

77. It is inaccurate, incomplete, and/or materially misleading to report "Petition for Chapter 13 Bankruptcy" when the account was not included in a bankruptcy plan and instead is an account the consumer is paying directly to the creditor.

78. Reporting an account was "included in bankruptcy" has no meaningful different from reporting that an account was "discharged in bankruptcy"—that is, the phrases are viewed as having the same meaning. *See Diaz v. Trans Union, LLC*, No. 1:18-cv-01341-DAD-EPG, 2019 U.S. Dist. LEXIS 95549, at *7 (E.D. Cal. June 5, 2019) "Indeed, many courts considering this very issue have concluded that "[t]here is no meaningful difference between the phrase `included in bankruptcy' and the phrase `discharged in bankruptcy.'") (*citing Butler v. Equifax Info. Servs., LLC*, No. 5:18-cv-02084-JGB-SHK (C.D. Cal. Apr. 3, 2019); *Smith v. Trans Union, LLC*, No. 2:18-cv-13098-GCS-SDD (E.D. Mich. May 10, 2019); *Fleming v. Trans Union, LLC*, No. 2:18-cv-9785-PA-PLA (C.D. Cal. March 8, 2019).

79. As evidenced by Defendants' failures to report accurate information on the Midland Account despite knowledge of the actual open and paying status of the Midland Account after receiving Plaintiff's dispute to Experian and the supporting documents attached to those disputes, Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

80. As evidenced by the inaccurate re-reporting after Plaintiff sent Experian a detailed dispute identifying the inaccurate information related to Plaintiff's Midland Account, Defendants, upon receipt of Plaintiff's disputes, each respectively failed to conduct proper and reasonable reinvestigations concerning the inaccurate information after receiving notice of the dispute from Plaintiff in violation of 15 U.S.C. §1681i and/or 15 U.S.C. § 1681s-2(b).

81. Defendants failed to review all relevant information provided by Plaintiff in his dispute, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

82. Due to Defendants' failure to reasonably investigate, Defendants further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

83. Defendants' continued inaccurate and negative reporting of the Midland Account in light of their knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

84. Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of § 1681n(a). *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

85. Based upon Defendants' knowledge of the Account, even if Defendants could claim they did not willfully violate the FCRA, their conduct was at the very least done with reckless disregard of their obligations under 15 U.S.C. § 1681e(b), and/or 15 U.S.C. § 1681i, and/or 15 U.S.C. § 1681s-2(b).

86. Also as a result of Defendants' continued inaccurate and negative reporting, Plaintiff have suffered actual damages, including, without limitation, fear of credit denials, actual credit denials, reduced credit scores, emotional distress, frustration, missed personal time in order to tend to this matter, vehicle operating costs for miles driving in order to tend to this matter, and inconvenience.

87. By inaccurately reporting account information, Defendants acts and omissions have resulted in the illegitimate suppression of Plaintiff's FICO credit scores and other credit rating model scores.

88. The adverse effect on Plaintiff's credit score places Plaintiff at the material risk of being denied credit or receiving less favorable credit terms than he otherwise would.

89. The existence of consumer reports which inaccurately, incompletely, and/or materially misleadingly report the Mortgage, and/or falsely suggest that the Mortgage has been discharged or is subject to discharge, make it inherently more difficult for Plaintiff to refinance the Mortgage in the future.

90. Plaintiff's Experian consumer report was published to third parties while the inaccurate, incomplete, and/or materially misleading information discussed herein was present on Plaintiff's Experian consumer report.

91. Defendants thus defamed Plaintiff by publishing inaccurate, incomplete, and/or materially misleading information to others.

92. The inaccurate information negatively reflects upon Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor, and Plaintiff's credit worthiness.

93. By inaccurately reporting account information after notice and confirmation of its errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

## First Cause of Action
## The Fair Credit Reporting Act
## 15 U.S.C. § 1681 *et seq*.

94. Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs as if fully set forth herein.

95. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

96. As a result of each negligent violation of the FCRA, Plaintiff is entitled to actual damages from Defendants, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2).

97. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100.00 and not more than $1,000.00, pursuant to 15 U.S.C. §1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and costs together with reasonable attorney's fees pursuant to 15 U.S.C. §1681n(a)(3) from Defendants.

98. Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the actual damages and harm to Plaintiff that are outlined more fully above, and as a result, Defendants are liable to Plaintiff for the full amount of statutory, actual, and punitive damages, along with attorney's fees and costs of litigation.

**Request for Jury Trial**

99. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

**Prayer For Relief**

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

1. A declaratory judgment that Defendants' actions as discussed herein are unlawful;
2. Plaintiff's actual damages from each Defendant;
3. Statutory damages of not less than $100 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), from each Defendant;
4. Punitive damages, pursuant to 15 U.S.C. § 1681n(a)(2), from each Defendant;
5. An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n(a)(3) and/or 1681o(a)(2), from each Defendant; and
6. Any other relief the Court may deem just and proper.

Dated: December 2, 2021                           Respectfully submitted,

/s/ James R. Crump
James R. Crump #78704
Ryan M. Callahan #25363
**Callahan Law Firm, LLC**
222 W. Gregory Blvd., Suite 210
Kansas City, MO 64114-1138
Ph: 816-822-4041
ryan@callahanlawkc.com
james@callahanlawkc.com
Attorneys for Plaintiff